UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JERRY R. STEVER,<br><br>        Plaintiff,<br><br>v.<br><br>US BANCORP and US BANCORP<br>INVESTMENTS, INC.,<br><br>        Defendants. | 3:14-CV-00273-LRH-WGC<br><br>ORDER |

Before the Court is Defendants US Bancorp and US Bancorp Investments, Inc.'s ("USBI") Motion for Summary Judgment. Doc. #24.[1] Plaintiff Jerry R. Stever ("Stever") filed an Opposition (Doc. #25), to which USBI replied (Doc. #26).

I.   **Facts and Background**

USBI hired Stever as an Investment Financial Consultant for the Northern Nevada and Eastern California territory on July 12, 2004, when Stever was sixty-one years old. Stever's title changed to Financial Advisor in 2008. Stever's duties as a financial advisor included delivering wealth management advice, advising customers on the pros and cons of investment products, and related compliance obligations. Stever's office was located in U.S. Bank's Reno, Nevada branch, but he traveled to other branches as needed. When Stever began his employment, he worked with two other full-time financial advisors in the territory, and the three of them together covered all branches in the territory. The other two financial advisors resigned in 2006 and 2007.

---

[1] Refers to the Court's docket number.

Stever operated as the only financial advisor in the territory until Ike Hoashi ("Hoashi") was hired in July, 2008. Stever and Hoashi were the only financial advisors in the territory between July, 2008, and June, 2011. When Hoashi was hired, USBI also hired an assistant who worked part-time for Stever and part-time for Hoashi. The assistant resigned in December, 2010. Stever told his manager at the time, David Terrell ("Terrell"), that he could not adequately serve his clients and create new business without an assistant, but Terrell stated that he would not replace the assistant. In early 2011, Stever again told Terrell that he would not be able to meet his production goals without an assistant.

USBI hired James Schuster ("Schuster") as Regional Manager in December, 2010, and Schuster began managing the Northern Nevada and Eastern California territory on April 1, 2011. Schuster was tasked with increasing production in the territory. Schuster's office is located in U.S. Bank's Santa Rosa, California, branch but he travels throughout the territory as needed. Stever recalls meeting Schuster first in early 2011, and believes that Stever told him that it was difficult to cover a large territory without an assistant. Schuster and Stever met approximately five times before Stever was terminated in late 2011, and Stever characterizes their relationship as negative.[2]

On multiple occasions, USBI's compliance department notified Schuster that Stever had not completed required certifications or updates required of financial advisors. Each time, Schuster forwarded these notices in emails to Stever, but Stever never replied. On May 27, 2011, the compliance department notified Schuster that they were issuing Stever a Letter of Caution for failure to complete the Quarterly Transaction and Holding Reports, and for failing to complete required certifications by the April 30, 2011, deadline. Schuster emailed the Letter of Caution to Stever, and both Schuster and Stever signed it and returned it to compliance.

///

---

[2] Stever describes Schuster as "Atilla the Hun," and states that he was "by far the worst" manager he had during his employment at U.S. Bank. Doc. #24, Ex. 1 at 111:9-15.

Schuster notified Stever on June 23, 2011, that he hired a new financial advisor, and asked which accounts Stever would like to retain. Stever and Schuster met in person on June 30, 2011, at which time Stever told Schuster which accounts he wished to retain. Schuster also told Stever at this meeting that he needed to improve his communication skills, noting that Stever had a history of not responding to calls and emails. Stever stated that his assistant used to respond to emails, but Schuster replied that responding to emails was a necessary part of Stever's job, and that he was the only financial advisor who consistently failed to respond.

Schuster and Stever again met in person on August 24, 2011. In addition to discussing which branches Stever would retain, Schuster expressed concern about Stever's production, which had been consistently below the expected average monthly production goal of $35,907.[3] Additionally, Schuster reiterated the need for Stever to improve his communication skills. In particular, Schuster told Stever that he received an email on July 20, 2011, from another regional bank manager stating that two customers had contacted him complaining that Stever would not return their calls. *See* Doc. #24, Ex. 3, Ex. O.[4]

In mid-2011, Schuster hired two new financial advisors: Ron Waicul ("Waicul") began work on September 1, 2011, and Bill Love ("Love") began work on September 6, 2011. Waicul was fifty-eight when he was hired, and Love was sixty-eight when he was hired. Schuster assigned

///

///

---

[3] Stever's production through August, 2011, was as follows: January – $1,650; February – $2,977; March – $45,436; April – $16,606; May – $14,882; June – $4,952; July – $9,235; August – $18,905. Doc. #24, Ex. 3 ¶¶ 25, 30.

[4] Stever's Opposition includes several objections to evidence in USBI's Motion. Doc. #25 at 3-6. Stever objected to this email on the grounds that the author, Mitchell Cohen, was not named as a witness, and the contents of the email are inadmissible hearsay. This objection is overruled. First, Cohen was disclosed as a witness on August 26, 2014. *See* Doc. #26, Ex. A. Additionally, this email is not inadmissible hearsay because it was offered not for the truth of the matter asserted, but to show its effect on Schuster's state of mind. Stever's objections are similarly overruled where this Order has referred to other statements communicated to Schuster regarding Stever's performance—because they are offered not for the truth of the matter asserted, but for their effect on Schuster's state of mind.

Linda Denton ("Denton") to work as an assistant to Waicul and Love.[5] Stever retained the branches that he had previously covered in Reno and Sparks, Nevada, but many of the other branches were reassigned to Waicul and Love.

Schuster and Stever met again on September 7, 2011, to discuss the need for Stever to improve his production. Schuster gave Stever a verbal warning, and again stated that he needed to improve communication. On September 29, 2011, Schuster prepared an Action Plan for Stever, stating expectations that Stever would meet a reduced monthly goal of $25,000, regularly attend conference calls, make a specified number of contact calls and client appointments each week, and submit a weekly activity log to Schuster. The Action Plan stated that "[a]ny further incidents . . . may result in further disciplinary action up to and including termination," and that USBI "reserve[d] the right to take additional action with respect to [Stever's] employment, including termination, prior to the completion of the time period" of the Action Plan. Doc. #24, Ex. 3, Ex. Q.[6]

USBI alleges that Stever never sent Schuster weekly activity logs, continued to display poor communication skills, and declined to learn certain required technological programs. Moreover, Schuster learned that Stever had been calling clients assigned to other financial advisors to ask them to write Schuster letters stating that they wanted Stever to operate as their financial advisor. In at least once instance, Schuster received an email which stated that Stever told customers that they should not work with "the new guy," Love. *See id.*, Ex. W. On October 26, 2011, Schuster sent Stever an email requesting that he complete his Capabilities Pitchbook and Bio, which had been due on September 30, 2011. Schuster reminded Stever that completing such assignments on

---

[5] Stever alleges that the younger Waicul was hired to replace him because Waicul was assigned many of Stever's clients and branches. Doc. #25 at 10.

[6] Schuster sent Stever the Action Plan via email on September 29, 2011, and asked Stever to call Schuster to discuss it. Receiving no reply, Schuster left Stever a voicemail and email on October 5, 2011 again asking for a response. Stever first contacted Schuster regarding the Action Plan on October 10, 2011. Stever states that he attempted to contact Schuster on numerous occasions, but was told that Schuster was too busy.

time, and learning certain technological programs, were requirements of his Action Plan. Stever did not respond to this email, nor did he respond to a related voicemail from Schuster.

Stever improved his production levels in October 2011—producing $47,000 that month alone. Nevertheless, on November 9, 2011, Schuster discussed terminating Stever with USBI's human resources manager Michelle Helm ("Helm") and Schuster's boss, a senior vice president. In a meeting on November 15, 2011, Schuster told Stever that he was being terminated. Stever then called Helm and complained of age bias from Schuster. Helm told Stever that the company would investigate, and told Schuster to postpone Stever's termination pending the investigation. The investigation determined that no age discrimination had occurred. Stever was officially terminated on December 1, 2011.

Stever filed a Complaint for Damages and Declaratory Relief on May 24, 2014, and an Amended Complaint on June 13, 2014. Doc. #1; Doc. #5. The Amended Complaint alleged two causes of action: (1) unlawful discrimination in violation of the Age Discrimination Employment Act ("ADEA"); and (2) breach of the implied covenant of good faith and fair dealing. Doc. #5. Following stipulation by the parties, the Court dismissed Stever's second claim for breach of the implied covenant of good faith and fair dealing on August 19, 2014. Doc. #17; Doc. #18. USBI filed this Motion for Summary Judgment on February 6, 2015. Doc. #24.

**II.   Legal Standard**

USBI seeks dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The 8(a)(2) pleading standard does not require detailed factual allegations, but a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

1  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

2   To satisfy the plausibility standard, 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the pleaded factual content allows the Court to draw the reasonable inference, based on the Court's "judicial experience and common sense," that the defendant is liable for the misconduct alleged.  *See id.* at 678-79.  The plausibility standard "is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* at 678 (internal quotation marks omitted).

  In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true.  *Id.*  The "factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  Moreover, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth."  *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 681) (brackets in original) (internal quotation marks omitted).  The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation."  *Id.* (citing *Iqbal*, 556 U.S. at 681).  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  *Id*.

**III.  Discussion**

  To survive a motion for summary judgment on an age discrimination claim under the ADEA, Stever must first establish a prima facie case of age discrimination.  *Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (finding that the *McDonnell Douglas* burden-shifting framework

applies to ADEA claims at the summary judgment stage). If the plaintiff establishes a prima facie case, the "burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged actions." *Id.* (quoting *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010)). "If the defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." *Id.* "To prevail on a claim for age discrimination under the ADEA, a plaintiff must prove at trial that age was the 'but-for' cause of the employer's adverse action." *Id.* at 607 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009)).

To establish a prima facie case of age discrimination, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). At the summary judgment stage, the plaintiff must produce "evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion." *Shelley*, 666 F.3d at 608 (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996)).

USBI argues that Stever has failed to show that similarly situated younger employees were treated more favorably. Stever states that Waicul (at fifty-eight years old) was provided an assistant while Stever (at sixty-eight years old) was refused an assistant, and argues that this establishes that similarly situated younger employees were treated more favorably.[7] However, the evidence indicates that USBI provides assistants based on value of production. Schuster testified that USBI only provides an assistant to financial advisors who generate more than $1 Million in revenue,

///

---

[7] Under *O'Connor*, it is immaterial that the younger employee that was allegedly treated more favorably here was above forty years old, and therefore would also be protected under the ADEA. 517 U.S. at 312.

7

which can be spread between two financial advisors.[8]  *See* Doc. #25, Ex. 3 at 15:23-16:6.  When USBI hired Waicul and Love from Wells Fargo, part of the contract negotiation included that Waicul and Love would have an assistant, which did not violate USBI's policy because Waicul and Love generated more than $1 Million combined at Wells Fargo.  *Id.* at 21:6-18.  Additionally, it is important to note that Waicul shared his assistant with Love, who is the same age as Stever; Hoashi, who is the same age as Waicul, was denied an assistant.  Based on the foregoing, that Waicul and Love were provided an assistant does not "create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion."  *Shelley*, 666 F.3d at 608.

        Stever also argues that similarly situated younger employees were treated more favorably because Hoashi, who is ten years younger than Stever, was given an Action Plan that included a much lower revenue production expectation than Stever's Action Plan.  Specifically, Hoashi's Action Plan stated that he should generate at least $10,000 per month.  Doc. #25, Ex. 12.  Stever's Action Plan provided that he should generate at least $25,000 per month.  *Id.*, Ex. 10.  USBI argues that Hoashi "was not similarly situated to Stever because he had been employed only since 2008, not 2004."  Doc. #26 at 11.  The Court is not convinced that employers must provide identical production goals to all employees, regardless of when they joined the company and began forming client relationships.  Moreover, the record indicates that Stever was not terminated for failure to reach the production goals stated in his action plan; he exceeded the production goal in October, 2011, the month before he was terminated.  Rather, USBI presented a litany of reasons for Stever's termination:

> Stever was the only FA he has supervised since starting employment with USBI who refused to respond to a single email he sent him . . . ; failed to use USBI tools despite Schuster's reasonable request to do so; failed to submit weekly activity logs to Schuster when requested to do so; failed to do a single financial plan; failed to attend regional conference calls; received Letters of Caution from Compliance; and repeatedly contacted clients moved to other FAs despite Schuster's requests not to do so.

---

[8] The regional manager that preceded Schuster, Terrell, made the decision not to provide Stever and Hoashi another assistant when their assistant resigned.

*Id.* at 17-18. Stever was warned in his Action Plan that failure to submit financial plans, attend conference calls, and submit activity logs, or any other performance problems, could result in termination. The record therefore indicates that Stever was terminated for failure to comply with other stated performance standards, not failure to reach production goals. The difference in revenue expectation is irrelevant to Stever's adverse employment action.

Stever refers to a comment by Schuster as evidence that Schuster discriminated against him based on his age. During a conversation with Schuster, Stever noted that he was having difficulty with his computer, and that he believed it was not working properly. Stever paraphrases Schuster as responding that "we old dogs ha[ve] to learn new tricks." Doc. #25, Ex. 2 at 182:19-183:19. Schuster does not recall making this remark, and regardless, "'stray' remarks are insufficient to establish discrimination." *Merrick v. Farmers Ins. Grp.*, 892 F.2d 1434, 1438 (9th Cir. 1990).

The Court finds that Stever has not established that similarly situated younger employees were treated more favorably, or other evidence giving rise to an inference of discrimination, an element that is required to establish a prima facie case of age discrimination under the ADEA. *Whitman*, 541 F.3d at 932. The record therefore indicates that a reasonable jury could not find that Stever's age was the "but-for" cause of his termination. *See Shelley*, 666 F.3d at 607. Accordingly, the Court grants USBI's Motion for Summary Judgment.

Having granted USBI's Motion based on Stever's failure to state a prima facie case of age discrimination under the ADEA, the Court need not consider the other elements of the *McDonnell Douglas* burden shifting test. The Court notes, however, that the record supports USBI's assertion that Stever was terminated for legitimate nondiscriminatory reasons. *See Diyorio v. AT&T*, 242 Fed. Appx. 450, 452 (9th Cir. 2007) (finding that failure to comply with repeated directives regarding use of company programs, lack of initiative in developing relationships, and negative response to being placed on a performance improvement plan constitute legitimate nondiscriminatory reasons for an adverse employment action). Additionally, the Court does not believe that Stever could establish that this legitimate nondiscriminatory reason for his termination

9

was merely pretext for discrimination.  *Shelly*, 666 F.3d at 609 (stating that to establish pretext the plaintiff must show that the employer's explanation is "unworthy of credence," or that "discrimination more likely motivated the employer").  Finally, that USBI hired Love, who is the same age as Stever, and provided him with an assistant, indicates that Stever could not establish that his age was the "but-for" cause of his termination.  The Court notes that for an age discrimination claim under the ADEA, the plaintiff retains the burden of persuasion throughout the *McDonnell Douglas* burden shifting test, *id.* at 608, and Stever has not satisfied this burden.

**IV.    Conclusion**

IT IS THEREFORE ORDERED that USBI's Motion for Summary Judgment (Doc. #24) is GRANTED.

IT IS FURTHER ORDERED that the clerk of court shall enter judgment in favor of USBI and against Stever.

IT IS SO ORDERED.

DATED this 23rd day of June, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE